UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NANCY ANN OLLAR,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>　　　　Defendant. | Case No.: 1:13-cv-1450-BAM<br><br>**ORDER REVERSING AGENCY'S DENIAL OF BENEFITS AND ORDERING REMAND** |

**INTRODUCTION**

Plaintiff Nancy Ollar ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits ("DIB") pursuant to Title II of the Social Security Act.[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to conduct all further proceedings in this case before the Honorable Barbara A. McAuliffe, United States Magistrate Judge. (Docs. 6, 8.) The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge McAuliffe. Having carefully considered the parties' briefs, as well as the entire record in this case, the Court finds

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the defendant in this suit.

1

the decision of the Administrative Law Judge ("ALJ") is not supported by substantial evidence in the record and is not based upon proper legal standards. Accordingly, the Court recommends the Commissioner's determination be REVERSED AND REMANDED for further proceedings

## FACTS AND PRIOR PROCEEDINGS

On December 27, 2010, Plaintiff filed her current application for disability insurance benefits beginning July 4, 2010.  AR 69-72.[2]  Plaintiff's application was denied initially and on reconsideration. AR 44, 54. Subsequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  AR 81-82.  ALJ Timothy Snelling held a hearing on April 13, 2012, and issued an order denying benefits on May 17, 2012.  AR 17-22.  Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision.  AR 1-4.  This appeal followed.

**Hearing Testimony**

The ALJ held a hearing on April 13, 2012, in Stockton, California.  AR 28-60.  Plaintiff appeared and testified.  AR 28.  She was represented by attorney Sengthiene Bosavanh.  AR 28.

Plaintiff was fifty-three years old at the time of the hearing.  Plaintiff completed high school, attended two years of junior college, and worked for 22 years at Orchard Supply Hardware Store.  AR 32.  At the administrative hearing, Plaintiff testified that she lost her job at Orchard in February 2009 because the company downsized.  AR 33.

Plaintiff primarily alleges disability due to lower back and hip pain.  AR 152. When asked about her physical impairments and treatment, Plaintiff responded that she had undergone physical therapy and pain management and had seen a surgeon, who discouraged surgery for her back impairment.  AR 36.

When questioned by the ALJ about her daily activities, Plaintiff testified that she lives at home with her mother and husband; both retired.  Plaintiff prepares simple meals in the microwave and slow cooker and also made sandwiches.  AR 39. Her husband did the laundry, but she sorted it and hung it up.  AR 38.  Plaintiff stated that since the onset of her disability, it takes more time for her to perform

---

[2]  References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

these activities. AR 47. She put the dishes in the dishwasher and swept the kitchen floor, but her husband did the vacuuming. AR 39. She went to the grocery store with her husband and he did the lifting and bending. AR 39, 48. While Plaintiff drives a car, she only makes short trips such as to the store to get a loaf of bread. AR 39. Plaintiff's husband drives her to medical appointments and drives when they travel to restaurants or to visit family. AR 40-41. Plaintiff has limited hobbies, but she testified that she reads for short periods of time; she also watches some television. AR 44.

Plaintiff testified that she sat in her recliner with pillows under her knees for about two to three hours a day, which helped alleviate her back pain. AR 44-45, 50. Vicodin, Plaintiff's most effective pain medication, relieves her pain for about an hour and then she waits another three hours before she can take the medication again. AR 45-46. Plaintiff uses hot and cold compresses daily, which relieves her pain for a while. AR 46.

Plaintiff also suffers from bursitis in her hips, which causes pain and interrupts Plaintiff's sleep. AR 47. Plaintiff receives hip injections and her last injection, administered the previous month, dulled the pain, but not completely. Plaintiff still has pain when she stands for too long or when she sleeps at night. AR 49.

At the end of the hearing, Plaintiff clarified that her back pain started before her onset date of July 2010, which is when she stopped receiving temporary (State of California) disability payments. AR 52-53. The ALJ finished the hearing without seeking testimony from a vocational expert and the administrative hearing was concluded.

**Medical Record**

The entire medical record was reviewed by the Court. AR 216-745. The medical evidence, summarized here, will also be referenced below as necessary to this Court's decision.

Plaintiff left her position at Orchard Hardware Supply in February 2009. On May 4, 2010, Plaintiff presented to Rufino M. Uytingco, M.D., her primary care physician, with complaints of recurrent back pain, numbness, and tingling in her lower extremities. AR 229. Dr. Uytingco told Plaintiff she needed an MRI (magnetic resonance imaging) and a neurosurgery referral, but Plaintiff had to wait for insurance approval. AR 231.

  Plaintiff went for an MRI on October 28, 2010 and the lumbar MRI revealed severe spondylosis, severe disc space narrowing, and mild posterior osteophytic spurring at L5-S1, as well as mild abnormalities at L2-L3.  AR 215-216.

  On November 8, 2010, Plaintiff complained to Dr. Uytingco of continuing low back pain.  AR 226.  She said her medications (Vicodin, an opioid pain reliever, and Ultram, a narcotic pain reliever) were not helping; she could not take Tramodol (Ultram) in the daytime because it made her sleepy.  AR 116-18.  Plaintiff reported an upcoming appointment with a neurologist.  AR 226.  On December 30, 2010, Dr. Uytingco referred Plaintiff to physical therapy.   AR 225.

  On January 3, 2011, Ana Maria DeVilliers, M.D., a neurosurgeon, reviewed Plaintiff's lumbar MRI report and disagreed with the radiologist that Plaintiff had spondylosis (narrowing of the canal). AR 242.  Instead, Dr. DeVilliers diagnosed loss of disc and a transitional segment between L5-S1 and recommended medical management of Plaintiff's soft-tissue response to the lack of shock absorption caused by her disc loss.  AR 242.  Dr. DeVilliers opined that surgery was not the appropriate treatment for Plaintiff's lumbar impairment.  AR 242.

  On January 14, 2011, Plaintiff underwent a physical therapy evaluation.  AR 244. The physical therapist's objective findings included significant limitations in Plaintiff's lumbar ranges of motion (50 percent).  AR 245.  Plaintiff's physical therapist noted that Plaintiff "is uncomfortable with anything she does and she is restless when sitting and has great difficulty and discomfort getting up and down on treatment table."  AR 246. The physical therapist also indicated her findings were consistent with acute lumbar spondylosis with radiculopathy and recommended a four-week course of physical therapy, including Body Mechanic Training, Core Stabilization and Mechanical Lumbar Traction.  AR 244.  On February 2, 2012, Plaintiff's physical therapist released Plaintiff from physical therapy because she had experienced no relief.  AR 247.

  Dr. DeVilliers referred Plaintiff to Kyle Heron, M.D., a pain specialist, who examined Plaintiff on February 14, 2011. AR 251-52.  Abnormalities observed by Dr. Heron included less than 5 degrees of extension in Plaintiff's back with extreme discomfort and severe tenderness to palpation bilaterally in Plaintiff's low lumbar spine over the facet column.  AR 252.  Dr. Heron diagnosed "fairly severe" single-level spondylosis and "what appears" to be axial mechanical lower back pain "likely related" to

L4-L5 and L5-S1 arthropathy. AR 252. Dr. Heron recommended diagnostic medial branch blocks (epidural injections) at L4-L5 and L5-S1 bilaterally and indicated he might recommend radio frequency ablation for the same area. AR 252.

On March 8, 2011, Linda Woodard, D.O., a state agency physician, reviewed Plaintiff's medical records and indicated Plaintiff could perform light work. AR 253-68. In so finding, Dr. Woodard only reviewed Dr. Uytingco's records. AR 69.

On March 10, 2011, Dr. Heron administered bilateral lumbar medial branch blocks at L3-L4, L4-L5 and L5-S1, at which time Plaintiff reported marked pain relief and increased ability to extend and twist. AR 271. On March 22, 2011, Plaintiff reported to Dr. Uytingco that the epidural injections had helped for a few hours and she no longer took Vicodin because it gave her headaches. AR 278.

Dr. Uytingco prescribed a Lidoderm patch (local anesthetic) and Restoril (a sleep aide). AR 280.

On April 5, 2011, Plaintiff reported to Sue Schoonover, a physician's assistant ("PA") at Dr. Heron's pain clinic, that the epidural injection administered by Dr. Heron had given her approximately 70 percent relief for about three hours. AR 345. PA Schoonover's examination revealed significant pain of the lumbar sacral facet joints and moderate pain with range of motion of the lumbar spine, especially extension and rotation. AR 345. Based on PA Schoonover's report, Dr. Heron recommended radiofrequency ablation of Plaintiff's medial branch nerves at L3-L4, L4-L5, and L5-S1, and insurance authorization was requested. AR 345.

On April 28, 2011, Plaintiff underwent a bilateral lumbar medial branch radiofrequency ("RF") rhizotomy[3] performed by Dr. Heron. AR 349. On June 30, 2011, Dr. Heron administered injections in Plaintiff's bilateral sacroiliac joints, right hip bursa (fluid-filled sac that cushions joints) and left piriformis (gluteal muscle). AR 348. In June 2011, Plaintiff reported to Dr. Uytingco that the epidural injections had not helped her, but pain medications partially alleviated her pain. AR 358.

---

[3] Plaintiff defines "radiofrequency rhizotomy" as an "an advanced injection procedure designed to decrease pain in the spine by destroying the nerves with highly localized heat generated with radiofrequency. Radiofrequency (RF) Rhizotomy [ ]," nyspinemedicine, http://www.nyspinemedicine.com/procedures." (Doc. 14 at 3, n.1).

On July 12, 2011, Jensine Wright, M.D., another state agency physician affirmed the opinions of Dr. Woodard that Plaintiff could perform light work. AR 317-24. The records reviewed by Dr. Wright were those from Drs. Uytingco and Devilliers, as well as Plaintiff's physical therapy records. AR 74.

On August 22, 2011, Dr. Uytingco recommended that Plaintiff's specialist assess Plaintiff's lumbar limitations and perform a disability determination. AR 337, 354-55.

On September 26, 2011, Dr. Heron, Plaintiff's pain specialist, opined that Plaintiff could not perform full-time work at any exertional level. AR 339. Dr. Heron opined that Plaintiff's severe sacroilitis and lumbar degenerative disc disease impairment met or equaled Listing 1.04. AR 339-40.

On November 3, 2011, Dr. Heron performed right lumbar RF procedures at the L3-L4, L4-L5, and L5-S1 levels of Plaintiff's spine and, on December 8, 2011, he performed additional RF procedures at the same levels. AR 346-47.

On February 22, 2012, Plaintiff complained of lower back pain and bilateral hip pain and indicated that the RF procedures had provided no significant relief. AR 350. An additional epidural injection was administered and bilateral hip x-rays were planned. AR 350. Hip and pelvis x-rays performed on February 23, 2012, revealed calcifications adjacent to the right greater trochanter (hip bone), indicative of calcific tendinitis. AR 351.

Thereafter, Dr. Uytingco referred Plaintiff for a consultation with Richard W. Slovek, M.D., an orthopedic surgeon, which was performed on March 16, 2012. AR 352. Dr. Slovek reviewed x-rays of Plaintiff's lumbar spine, which showed asymmetrical sacralization of L5-S1 on the right with loss of disc space; and total loss of disc space at L4-L5 with marked sclerosis (hardened tissue) and osteophytic change (bone spurs) and facet arthrosis (degeneration). AR 353. He also reviewed Plaintiff's recent hip x-rays and her lumbar MRI reports from 2006 and 2010. AR 352.

Dr. Slovek observed stiffness and loss of lordosis (curvature) in Plaintiff's spine. AR 353. His examination revealed tenderness over L4-L5, 75 degrees flexion with pain, increasing pain with 15 degrees extension and pain with only 10 degrees of extension and lateral bending, 25 degrees lateral rotation to the right and left with pain, and positive (painful) straight leg tests. AR 353. Dr. Slovek's

examination of Plaintiff's hips revealed "exquisite tenderness over the trochanter, more on the left than right." AR 353.

Dr. Slovek diagnosed trochanteric bursitis (inflammation of the bursa) in Plaintiff's right and left hips, and severe degenerative lumbar disc disease L4-L5 with referred pain. AR 353. Dr. Slovek recommended injections of Kenalog (a corticosteroid) in both hips and prescribed Klonopin (an anti-convulsant) for Plaintiff's sleep difficulty caused by pain. AR 353. Plaintiff previously experienced side effects with Hydrocodone, as a result Dr. Slovek prescribed Ultram for her pain. AR 353. Dr. Slovek said he would wait to see whether Plaintiff made progress with this conservative treatment and told Plaintiff that she may not benefit from back fusion surgery. AR 353.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard. AR 17-22. More particularly, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since July 4, 2010. AR 17. Further, the ALJ identified degenerative spondylosis L5-S1 and facet arthropathy at L4-S1 with bilateral sacroiliitis and trochanteric bursitis of the right and left hips as severe impairments. AR 19. Nonetheless, the ALJ determined that the severity of the Plaintiff's impairments did not meet or exceed any of the listed impairments. AR 19.

Based on his review of the entire record, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform a wide range of light work with the ability to lift up to 20 pounds occasionally; lift or carry up to 10 pounds frequently; sit, stand or walk for approximately 6 hours each per 8 hour workday, with normal breaks. Plaintiff can occasionally climb ladders, ropes or scaffolds. The ALJ found that Plaintiff could return to her past relevant work as a commercial services manager. AR 22. The ALJ therefore found that Plaintiff was not disabled under the Social Security Act. AR 22.

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence.

42 U.S.C. § 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commission's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commission must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commission's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In her opening brief, Plaintiff challenges the ALJ's disability determination on three grounds: (1) the ALJ erred in evaluating the medical evidence; (2) the ALJ failed to accurately assess her credibility, and (3) the ALJ failed to adequately develop the record.

## DISCUSSION

**1.   The ALJ Failed To Fully Develop the Record and Weigh the Medical Evidence**

As Plaintiff's first and third challenges are directly correlated, the Court will address them together. Plaintiff's chief complaint in her first and third challenges is that the ALJ's failure to

1  adequately develop the record with respect to her treating physician's opinion necessarily undermines
2  the ALJ's determination that her treating physician's opinion is inconsistent with the overall medical
3  evidence in the record.  Specifically, Plaintiff asserts that while the ALJ was presented with detailed
4  medical records from her treating physician Dr. Heron, the nonreviewing physicians failed to review
5  Dr. Heron's records and the ALJ failed to order a consultative examination evaluating her physical
6  impairments.  Therefore, because the ALJ failed his duty to develop the record, the ALJ's failure to do
7  so renders the ALJ's reliance on the nonreviewing physicians' opinions legal error.

   A.     **Legal Standard**

   The ALJ has an independent duty to fully and fairly develop a record in order to make a fair determination as to disability, even where the claimant is represented by counsel. *See Celaya v. Halter*, 332 F.3d 1177, 1183 (9th Cir. 2003); *see also Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001); *Crane v. Shalala*, 76 F.3d 251, 255 (9th Cir. 1996) (citing *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983)). Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to "conduct an appropriate inquiry." *See Tonapetyan*, 242 F.3d at 1150.  That duty is heightened when the claimant is unrepresented or is mentally ill and thus unable to protect his or her own interests. *See Celaya*, 332 F.3d at 1183; *see also Tonapetyan*, 242 F.3d at 1150.  However, it is the Plaintiff's burden to prove disability. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) (quoting *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) ("The claimant bears the burden of proving that she is disabled").

   The ALJ is not obliged, however, to undertake the independent exploration of every conceivable condition or impairment a claimant might assert. Therefore, an ALJ does not fail in his duty to develop the record by not seeking evidence or ordering further examination or consultation regarding a physical or mental impairment if no medical evidence indicates that such an impairment exists. *See Breen v. Callahan*, 1998 U.S. Dist. LEXIS 7795, 1998 WL 272998, at *3 (N.D. Cal. May 22, 1998) (noting that, in the Ninth Circuit, the ALJ's obligation to develop the record is triggered by "the presence of some objective evidence in the record suggesting the existence of a condition which could have a material impact on the disability decision") (*citing Smolen v. Chater*, 80 F.3d 1273, 1288

(9th Cir. 1996); *Wainwright v. Secretary of Health and Human Services*, 939 F.2d 680, 682 (9th Cir. 1991)).

### B. Pertinent Facts

On November 8, 2010, Plaintiff complained to her primary care physician Dr. Uytingco that she was suffering with back and hip pain. Dr. Uytingco referred Plaintiff for an MRI and a visit with neurosurgeon Dr. DeVilliers. AR 242. Dr. DeVilliers reviewed Plaintiff's MRI and found that based on her injuries, "surgical management is not appropriate treatment." AR 242. Given the need for nonsurgical treatment, Dr. Uytingco referred Plaintiff for physical therapy. Plaintiff attended physical therapy for approximately a month, but she was released with a recommendation that she find alternative ways of pain management. AR 247. As a result, Dr. DeVilliers referred Plaintiff to pain specialist, Dr. Heron, on February 14, 2011. AR 251.

Dr. Heron treated Plaintiff and administered various pain treatments on five occasions between February 14, 2011 and the administrative hearing on April 13, 2012. AR 251-252, 271, 341-351. Based on his treatment of Plaintiff, Dr. Heron opined that Plaintiff could not perform full-time work at any exertional level. AR 339. Dr. Heron further opined that Plaintiff's impairment met or equaled Listing 1.04. AR 339-40. On March 10, 2011, Plaintiff continued treatment with Dr. Heron including receiving surgical radiofrequency rhizotomy injections. AR 271.

On March 17, 2011, shortly after beginning treatment with Dr. Heron, Dr. Woodard, a state agency reviewing physician, reviewed the medical records of Dr. Uytingco in connection with Plaintiff's disability claim. Based solely on the review of Dr. Uytingco's records, the reviewing physician determined that Plaintiff could perform light work. AR 69.

On July 12, 2011, Jensine Wright , M.D., another state agency physician reviewed the medical records from Drs. Uytingco, Devilliers, and Plaintiff's physical therapist. Dr. Wright affirmed the findings of reviewing physician Dr. Woodward that Plaintiff could perform light work. AR 74.

Upon review of the medical evidence in the record, the ALJ gave Dr. Uytingco's opinion "reduced weight because his opinion is incomplete." AR 21. Similarly, the ALJ gave Dr. Heron's opinion reduced weight as follows:

> Dr. Heron completed a Questionnaire dated September 16, 2011, in which he noted the claimant is temporarily totally disabled and unable to do any work at all. Dr. Heron's opinion is given reduced weight because his opinion is quite conclusory, and his diagnosis is neither supported by the medical records nor consistent with other substantial evidence of record.

AR 21.

The ALJ instead relied on the opinions of the reviewing physicians, Drs. Woodard and Wright, who did not have the benefit of Dr. Heron's medical opinions. The ALJ found as follows:

> A Physical Residual Functional Capacity Assessment and a Case Analysis were completed by a State agency medical consultant. The State agency medical consultant determined the claimant was capable of a light residual functional capacity including being able to sit, stand and/or walk for 6 hours each out of an 8-hour workday; while being able to lift and/or carry 20 pounds occasionally and 10 pounds frequently.
>
> The claimant was found able to frequently balance, stoop, kneel, crouch, crawl, and climb ramps and stairs but occasionally climb ladders, ropes, and scaffolding. The State agency medical consultant found no manipulative, visual, communicative, or environmental limitations were established.
>
> Another Physical Residual Functional Capacity Assessment was prepared on July 12, 2011, by Dr. Jensine Wright who emphasized the claimant's allegations of disability exceed the limitations which would reasonably be expected based upon MRI and examination findings. Dr. Wright concluded that the earlier Physical RFC was appropriate and affirmed the earlier determination.
>
> The State agency medical consultants' assessments are given great weight as they are based upon review and evaluation of the medical evidence of record, supported by objective findings and consistent with the records as a whole.

AR 22.

**C.     Analysis**

Overall, Plaintiff argues that the ALJ's failure to accurately weigh the medical evidence is directly related to the ALJ's failure to fully develop the record. First, Plaintiff asserts that the ALJ relied on the incomplete medical evidence of the reviewing physicians who did not review Dr. Heron's treatment records. Next, the ALJ failed to order a consultative examination or direct the reviewing physicians to update their opinions with all of the evidence in the record. Given these circumstances, the Court concurs that while the ALJ's duty to develop the record was triggered in this case, the ALJ failed that duty for the reasons outlined by Plaintiff.

The ALJ's duty to develop the record is triggered if there is ambiguous evidence or the record is inadequate for proper evaluation of evidence. Both are true here: the ALJ discredited Dr. Uytingco's

11

opinion as "incomplete," and likewise discounted the opinion of Dr. Heron because it was conclusory or lacking clear supporting evidence. AR 21. When the duty to develop the record is triggered, the ALJ can develop the record by (1) making a reasonable attempt to obtain medical evidence from the claimant's treating sources; (2) ordering a consultative examination when the medical evidence is incomplete or unclear and undermines the ability to resolve the disability issue; (3) subpoenaing or submitting questions to the claimant's physicians; (4) continuing the hearing; or (5) keeping the record open for more supplementation. *Tonapetyan*, 242 F.3d at 1150; 20 C.F.R. § 416.917.

In looking at the record, the ALJ did not make a reasonable attempt to request additional information from Plaintiff's treating physician. Instead, the ALJ relied on the opinions of the state agency physicians, who did not review the opinion or treatment records of Dr. Heron. AR 69, 74. Furthermore, to the extent that the ALJ found Dr. Heron's opinion to be inadequate, the ALJ could have ordered a consultative physical examination. The Court agrees with Plaintiff that the ALJ should have further developed the record in this instance.

Furthermore, the ALJ improperly substituted his lay opinion for that of the medical experts. *See generally, Tackett v. Apfel*, 180 F.3d 1094, 1102-03 (9th Cir. 1999) (ALJ may not substitute his own interpretation of the medical evidence for the opinion of medical professionals); *Banks v. Barnhart*, 434 F. Supp. 2d 800, 805 (C.D. Cal. 2006) (noting that an ALJ "'must not succumb to the temptation to play doctor and make [his] own independent medical findings'"). The ALJ rejected the opinion of Dr. Heron because it is inconsistent with the medical record. However, the ALJ was the only person to interpret Dr. Heron's treatment records, and as a result, this finding is based solely on the ALJ's own lay interpretation of the medical evidence. "The ALJ is not allowed to use his own medical judgment in lieu of that of a medical expert." *Winters v. Barnhart*, 2003 U.S. Dist. LEXIS 18544, 2003 WL 22384784, at *6 (N.D. Cal. Oct. 15, 2003); *see also Gonzalez Perez v. Secretary of Health & Human Services*, 812 F.2d 747, 749 (1st Cir. 1987) (ALJ may not "substitute his own layman's opinion for the findings and opinion of a physician"). Because the ALJ's assessment of Dr. Heron's opinion lacks a medical foundation, it represents an improper substitution of the ALJ's lay judgment for that of the medical experts. For this reason, the ALJ erred in failing to direct a medical expert to review all of the medical evidence or otherwise develop the record.

Ultimately here, the record lacks sufficient evidence to allow this Court to perform a meaningful judicial review. The ALJ acknowledged that the record was incomplete yet the ALJ did not satisfy his burden to fairly and fully develop the record. An ALJ's decision may be set aside due to his failure to develop the record if the claimant can demonstrate prejudice or unfairness as a result of said failure. *Vidal v. Harris*, 637 F.2d 710, 713 (9th Cir. 1991). The ALJ relied on the review of non-examining physicians that saw only part of the record; this incomplete determination does not represent a fair assessment of Plaintiff's impairments. For these reasons, the ALJ failed his duty to fully develop the record and his resulting efforts to weigh the incomplete medical evidence are therefore erroneous. This matter will be remanded so the whole record may be fully and properly addressed by the ALJ in evaluating the medical opinions and the resulting residual functional capacity.

## 2. Remand is Required

This Court has considered Plaintiff's request to award benefits rather than remand the case for additional proceedings, but remand is more appropriate here. The circumstances of this case indicate that there are outstanding issues that must be resolved before a final determination can be made. Further administrative review may remedy the ALJ's errors and therefore, remand is appropriate. *McLeod v. Astrue*, 640 F.3d 881, 888 (9th Cir. 2011); *see Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003)(remand is an option where the ALJ fails to state sufficient reasons for rejecting a claimant's excess symptom testimony);*see also Garrison v. Colvin*, 2014 U.S. App. LEXIS 13315, 2014 WL 3397218, at *21 (9th Cir. July 14, 2014) (court may "remand for further proceedings, even though all conditions of the credit-as-true rule are satisfied, [when] an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled"); *see generally INS v. Ventura*, 537 U.S. 12, 16 (2002) (upon reversal of an administrative determination, the proper course is remand for additional agency investigation or explanation, except in rare circumstances).

Additionally, because the Court remands this case for renewed consideration of the medical evidence, the Court dispenses with an exhaustive analysis of the ALJ's credibility determination. In light of the Court's finding that the ALJ failed to properly evaluate the opinion of Dr. Heron and develop the record, and because credibility determinations are inescapably linked to conclusions regarding medical evidence, 20 C.F.R. § 404.1529, the ALJ's credibility finding is also reversed and

the issue remanded. The Court need not consider Plaintiff's argument regarding credibility in light of the need for reversal on other grounds. *See Marcia v. Sullivan*, 900 F.2d 172, 177 n.6 (9th Cir. 1990) ("Because we remand for reconsideration of step three, we do not reach the other arguments raised."); *Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985) (per curiam) ("Because the 'misuse of the expert's testimony alone warrants reversal,' we do not consider the appellant's other claims.").

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's disability determination warrants remand. Accordingly, the decision is **REVERSED** and the case **REMANDED** to the ALJ for further proceedings. On remand the ALJ will reweigh the medical evidence and address the deficiencies outlined above. Additionally, although not addressed in this Order, on remand the Commissioner shall reevaluate Plaintiff's subjective symptom testimony in light of reweighing the medical evidence. If deemed necessary, the Commissioner may hold further hearings and receive additional evidence.

The Clerk of this Court is **DIRECTED** to enter judgment in favor of Plaintiff Nancy Ann Ollar, and against Defendant, Carolyn W. Colvin, Acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **March 23, 2015**            /s/ *Barbara A. McAuliffe*
                                       UNITED STATES MAGISTRATE JUDGE